UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Rae L. McCann,

        Plaintiff,

v.

Badger Mining Corporation,

        Defendant.

COMPLAINT

Case No. 18 CV 73

---

Plaintiff, Rae L. McCann, by her attorneys, Bakke Norman, S.C., by Peter M. Reinhardt, states and complains as follows:

## PARTIES

1. Plaintiff, Rae L. McCann, is an adult resident of the State of Wisconsin and resides at 35634 3rd St., Independence, Wisconsin.

2. Defendant, Badger Mining Corporation, is a domestic business corporation. Its principal place of business is located at 409 S. Church St., Berlin, Wisconsin.

## NATURE OF ACTION

3. Plaintiff, Rae L. McCann, claims the Defendant, Badger Mining Corporation, discriminated against her in the terms and conditions of employment based on disability, terminated her employment based on disability and failed to accommodate her disability in violation of 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(1) – (b)(7). Plaintiff also claims that Defendant discriminated against her by terminating her employment based on her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621-634.

1

4. Plaintiff, Rae L. McCann, filed a complaint with the Equal Rights on December 28, 2015, Case No. CR201503659, and cross-filed with the Equal Employment Opportunity Commission, Case No. 26G201600281C.

5. On November 15, 2017, Plaintiff, Rae L. McCann, received a Notice of Right to Sue with respect to the complaint identified in paragraph four hereof.

## JURISDICTION & VENUE

6. Jurisdiction in this court is proper as this case presents a federal question and controversy. Venue in the Western District of Wisconsin is appropriate because the conduct giving rise to Plaintiff's claims occurred in this district.

## ALLEGATIONS

7. Plaintiff, Rae L. McCann, was born on October 12, 1953. At all relevant times, Plaintiff was over the age of 40.

8. Plaintiff McCann began her employment with Atlas Resin Proppants in September of 2010, as a Production Lab Technician I.

9. Atlas Resin Proppants merged into Badger Mining Corporation in 2015. As a result, Plaintiff McCann became an employee of Badger Mining Corporation.

10. In the fall of 2013, Plaintiff McCann applied for and was promoted to a Lab Technician II. She worked out of the Merrillan, Wisconsin plants.

11. As an R & D Lab Technician II, Plaintiff McCann received and tested new resins. She also experimented with new resin coatings by mixing batches of sand with resin and looking for new resins. Additionally, Plaintiff McCann performed conductivity – testing to determine how air flows through sand.

12. Throughout her five years of employment with Atlas Resin Proppants and then Badger Mining Corporation, Plaintiff McCann did not receive any disciplinary action. Rather, she received consistent wage increases and favorable performance evaluations.

13. At all relevant times, Plaintiff McCann performed her duties to the legitimate expectations of Defendant.

14. At all relevant times, Plaintiff McCann was competent and qualified to perform her job duties and performed her job duties to the legitimate expectations of Defendant.

15. Around the first part of September 2015, Plaintiff McCann began suffering from pain in both of her hands and sought medical treatment. She was diagnosed as suffering from bilateral carpal tunnel, arthritis and deterioration of the cartilage in her thumbs and one finger. In an effort to relieve the pain in her hands, she began receiving cortisone injections.

16. Plaintiff's lab lead was Kimberly Breid. On September 21, 2015, Plaintiff McCann sent an e-mail to Breid advising Breid of her medical conditions and requested time off for doctor appointments. The e-mail was copied to Julie Casperson, in Defendant's Human Resources Department.

17. In the September 21, 2015 e-mail, Plaintiff McCann specifically identified the dates of her medical appointments, between September 30, 2015 and October 16, 2015, with a neurologist and orthopedic doctor. The e-mail also put Defendant on notice that Plaintiff would, most likely, undergo at least two surgeries in the future.

18. The following day, September 22, 2015, Ms. Casperson responded to Plaintiff McCann, via e-mail, stating:

> Thanks for the update. Sorry to hear you have been having so much pain with your hands. I am copying Greta on this response as you should probably get some paperwork started for FMLA and short term disability. Greta will follow up with you on what is needed.

3

19. Plaintiff McCann never received the FMLA paperwork or any follow-up from Human Resources or any of Defendant's management members.

20. After Plaintiff McCann disclosed her medical conditions of carpal tunnel and arthritis, she began receiving different treatment from Defendant, including being excluded from attending and participating in meetings that she had always previously attended.

21. The following week after disclosing her medical conditions to Defendant, Plaintiff McCann was summoned to a meeting at Defendant's plant in Taylor, Wisconsin.

22. Human Resource management members Julie Casperson and Beth Nighbor were present at the September 29, 2015 meeting. The purpose of the meeting was to give Plaintiff McCann an option of "early retirement." During this meeting, Plaintiff McCann advised Nighbor that she needed surgery on both her hands. Plaintiff McCann showed Nighbor her hands and Nighbor stated "your hands don't look bad."

23. In a letter dated September 29, 2015, the option for early retirement was memorialized in a letter. The letter states, in pertinent part:

> Due to continuing downturn in business conditions, we are providing associates 60 and older with the option of an early retirement package.

The letter also stated that Plaintiff McCann had two weeks to decide if she was going to accept the early retirement.

24. On October 1, 2015, Plaintiff McCann received a Medical Release for Work form stating she had been seen for medical appointments on September 30, 2015, and had another medical appointment the next day, on October 2, 2015. The comment section on the October 2, 2015, doctor slip referenced that Plaintiff McCann consider rotation of repetitive activities and ergonomic changes.

25. Plaintiff McCann requested that Defendant's Safety Coordinator readjust and reconfigure her work space, per her doctor's orders. The work space was not adjusted until approximately three weeks later.

26. On Monday, October 5, 2015, Plaintiff McCann received an e-mail from Breid stating that Nate (Coblentz) was now a R & D lab technician. Plaintiff McCann responded by asking if Nate was taking her place, her job. Breid replied "Well, we didn't know what was happening with your hands or if you were going to take the early retirement so we went ahead and brought him into R & D for now."

27. His first day working in R & D, Coblentz asked Plaintiff "So, how are your hands doing?" As Plaintiff McCann had only spoken with management regarding her medical conditions, Coblentz must have been informed of Plaintiff's medical conditions by management.

28. Plaintiff McCann turned down Defendant's early retirement option on October 13, 2015. When asked by R & D Leader Breid why she didn't take the early retirement, Plaintiff McCann stated "Well, I have three more years to work." R & D Leader Breid replied by stating that she thought Plaintiff McCann was only going to work for two more years.

29. The next week, on Friday, October 23, 2015, Plaintiff McCann received a call from Breid instructing her to be at a meeting, in Merrillan, on Monday, October 26, 2015 at 6:00 a.m. Plaintiff McCann also received a call from her manager, Erica Grant, on Sunday, October 25, 2015, informing Plaintiff of the early Monday morning meeting.

30. As instructed, Plaintiff McCann attended the meeting on Monday, October 26, 2015. At that time, Plaintiff was notified that she was being laid off.

31. During the October 26, 2015 meeting, Plaintiff McCann was given a packet of documents. One of the documents was a letter of recommendation. The letter of recommendation stated, in part:

> Due to a company-wide reduction in workforce due to a business downturn her position was eliminated.
>
> Rae was always willing to learn and was a valuable member of her team during her tenure with BMC. She was flexible, prompt and reliable and quality focused.

32. Plaintiff McCann's last day of work with Defendant was October 25, 2015.

33. At the time her employment with Defendant ended, Plaintiff McCann was 62 years old.

34. Plaintiff McCann received formal written notification of her layoff in a letter from Badger Mining Corporation dated November 2, 2015. The November 2, 2015 letter states, in part:

> As we have discussed, as the result of a downturn in business, Badger Mining Corporation ("BMC") has made the decision to eliminate your position and employment and that of others at the company.

35. Contrary to Defendant's contention in both its October 26, 2015 and November 2, 2015 letters, Plaintiff McCann's position was not eliminated.

36. Plaintiff McCann's duties and responsibilities were assumed by Nate Coblentz, a substantially younger, less experienced male.

37. Coblentz's date of birth is May 4, 1974. He is 20 years younger than Plaintiff McCann.

38. At the time of the lay-off, there was a significant amount of work to be completed in Plaintiff McCann's department – the R & D Department. At the time of the layoff, Plaintiff McCann was in the process of working on an ISO Crush project. The project was significant and had a targeted completion date of December, 2015.

39. Plaintiff McCann's work with Defendant was not production dependent. Accordingly, her work as a R & D Lab Tech. II was not affected by any purported downturn in business.

40. Plaintiff McCann was not Defendant's only lab technician to be wrongfully terminated because of age. Another older lab technician, Paulann Hart, was also terminated due to a purported elimination of her position.

41. Like Plaintiff McCann, Ms. Hart also received a letter of recommendation, dated October 26, 2015, and a formal notification of layoff dated November 2, 2015.

42. The language in both Ms. Hart's letters is almost identical to the language in both Plaintiff McCann's October 25, 2015 and November 2, 2015 letters from Defendant.

43. Like Plaintiff McCann, Ms. Hart was also told that her position was being eliminated when, in fact, substantially younger, less experienced and less qualified employees assumed Ms. Hart's duties and responsibilities.

44. Ms. Hart's date of birth is September 28, 1957. Ms. Hart was 58 years old when her employment with Defendant ended.

45. At all relevant times, Defendant's actions and omissions were attended by a willful or reckless disregard of Plaintiff's federally created rights.

### FIRST CAUSE OF ACTION – FAILURE TO PROVIDE REASONABLE ACCOMMODATION (Violation of 42 U.S.C. § 12112(b)(5))

46. Plaintiff realleges and incorporates the allegations in all previous paragraphs.

47. At all relevant times, Plaintiff McCann had a physical impairment that substantially limited her in one or more major life activities.

48. At all relevant times, Plaintiff McCann was a qualified individual with a disability.

49. At all relevant times, Plaintiff McCann could perform the essential functions of the R & D Lab Tech. II, with or without reasonable accommodation.

50. Defendant failed to make reasonable accommodations for Plaintiff McCann, which failure constitutes a violation of 42 U.S.C. § 12112(b)(5).

51. Plaintiff McCann has suffered and continues to suffer pecuniary harm, emotional injury, and pain and suffering as a result of Defendant's conduct.

### SECOND CAUSE OF ACTION – DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT (Violation of 452 U.S.C. § 12112(a) and § 12112 (b))

52. Plaintiff McCann realleges and incorporates the allegations in all previous paragraphs.

53. Defendant discriminated against Plaintiff McCann in the terms and conditions of her employment based on her disability and terminated her employment based on disability.

54. Plaintiff McCann's disability was a motivating factor in Defendant's employment decisions and actions described herein.

55. Defendant's conduct was a violation of 42 U.S.C. § 12112(a) and § 12112 (b).

56. Plaintiff McCann suffers and continues to suffer pecuniary harm and emotional injury as a result of Defendant's discrimination.

### THIRD CAUSE OF ACTION
### (Violation of 29 U.S.C. § 621-634)

57. Plaintiff realleges and incorporates all previous paragraphs.

58. At all relevant times Plaintiff McCann was over the age of 40.

59. Defendant discriminated against Plaintiff McCann in terms and conditions of her employment based on her age and terminated Plaintiff because of her age.

60. Plaintiff McCann suffers and continues to suffer pecuniary harm as a result of Defendant's conduct.

WHEREFORE, Plaintiff McCann respectfully requests the following relief:

A. Compensatory damages;

B. Back pay;

C. Front pay or reinstatement in lieu thereof;

D. Liquidated damages;

E. Punitive damages;

F. Prejudgment interest;

G. Attorney's fees and costs;

H. Such other further relief as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

Dated: 2/2/18

BAKKE NORMAN, S.C.

By: _____
Peter M. Reinhardt
Attorney No. 1025187
2919 Schneider Avenue SE, P.O. Box 280
Menomonie, WI 54751-0280
(715) 235-9016
preinhardt@bakkenorman.com

Attorneys for Rae L. McCann